William Erby Shaw and Mittie Shaw v. Commissioner.
Shaw v. Commissioner
Docket No. 70226.
United States Tax Court
T.C. Memo 1959-167; 1959 Tax Ct. Memo LEXIS 76; 18 T.C.M. (CCH) 728; T.C.M. (RIA) 59167; August 28, 1959
*76 During 1953 and 1954 petitioner loaned various sums of money to a painting contractor. One of the motives for lending this money was the hope of petitioner that the painting contractor would perform services for petitioner in his own real estate business, which included the construction of homes, at a price less than the comparable services would cost if obtained in the open market. The debt became worthless in 1954. Held, that petitioner has failed to prove that the worthless debt was proximately related to his trade or business so as to qualify as a business bad debt. Clarence Steele Bowen, Esq., 218 Emakcee Building, Greenville, S.C., for the petitioners. Robert A. Watson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1954 in the amount of $2,498.59. The sole issue presented is whether a loss sustained by petitioners from an unpaid loan is to be deducted as a business bad debt or as a nonbusiness bad debt. Findings of Fact Some of the facts have been stipulated and, to the extent so stipulated, are incorporated herein by this *77 reference. Petitioners W.E. and Mittie Shaw are husband and wife residing in Greenville, South Carolina. They filed a joint income tax return for the calendar year 1954 with the district director of internal revenue at Columbia. W.E. Shaw (hereinafter referred to as Shaw or petitioner) had been a distributor for Watkins products from 1940 until March 1954. As a distributor, petitioner would hire sales personnel to engage in the door to door selling of Watkins products. During the period that petitioner engaged in this business, he made various loans in differing amounts to certain of his sales personnel. Many of these loans were made for the purpose of keeping the sales force in his employ. Some of these loans were secured and some required interest payments to be made. In many instances the loans took the form of advances of merchandise by petitioner to a sales person. In one instance the due date on the note was one year or sooner if the borrower ceased to sell Watkins products. On August 31, 1945, petitioner and J. L. Coward, a building contractor, entered into the following agreement: "Aug. 31, 1945 "To Whom it May Concern: "This is to Certify that W. E. Shaw and *78 J. Louis Coward have entered into an agreement to transact business together, using W. E. Shaw's money, to invest in business transactions for profit. The net profits made from such business will be equally divided. "In case of investment in houses built, and not sold immediately, if we desire to rent, W. E. Shaw shall receive interest on his money invested before the profits are divided. "/s/ W. E. Shaw "/s/ J. Louis Coward" During the years 1945 to 1954, petitioner loaned Coward various sums of money in addition to amounts given under the above agreement. Some of these additional loans to Coward were for the purpose of assisting him in his contracting business. Coward performed certain services for petitioner in the area of general contracting for amounts less than the standard prices in the area for comparable work. This was Coward's method of repaying petitioner for the financial assistance in the form of loans that petitioner had given him. Petitioner began building and selling houses in 1945. During the period from 1945 to 1954, inclusive, he bought and sold between 6 and 12 houses. He purchased and sold between 10 and 13 lots of ground and owned 2 apartment houses *79 which he maintained for rental purposes during this same period. Petitioner gave up his business as a distributor for Watkins products in March 1954 and thereupon directed his time and energy to the real estate business with emphasis on buying and selling both improved and unimproved land. William Unthank, petitioner's friend of 25 years standing, was a painting contractor. In 1953, Unthank was about to commence a new activity in the painting line by bidding on Government contracts. With the commencement of this new activity, Unthank required financing. Petitioner loaned Unthank the following amounts on the listed dates: Date
Amount
March 21, 1953
$ 6,000
December 2, 1953
2,500
January 14, 1954
1,500
June 24, 1954
1,100
$11,100
The amounts of $2,500 and $1,500 on December 2, 1953, and January 14, 1954, respectively, were for the express purpose of meeting Unthank's payroll on the Government jobs. One of the motives of petitioner in loaning Unthank the above sums was the thought or belief that Unthank could be of service to petitioner in his real estate ventures. Unthank earned $600 on April 2, 1954, as a commission for his aid in selling a tract *80 of land owned by petitioner. This amount was not paid to Unthank, but was applied by petitioner against the loans then outstanding, reducing the balance owed to $10,500. The indebtedness of Unthank to petitioner in the amount of $10,500 became worthless in 1954. Unthank performed services for petitioner on a house sold by petitioner in 1953 for which petitioner paid Unthank at least $160.93. Petitioner paid Unthank on July 29, 1954, the amount of $82.50 for services performed on a house and lot which petitioner sold in 1954. Petitioner could have purchased building materials including paint, at builders' or wholesale prices. Petitioner was not licensed to engage in the business of lending money. Petitioner sustained a loss from a bad debt owed to him by Unthank which was not proximately related to the conduct of his trade or business. Opinion Petitioner contends that the loss arising from the loans to Unthank, which became worthless in 1954, constitutes a business bad debt, while respondent has determined that the loss incurred was from a nonbusiness bad debt. The ultimate issue to be decided is whether the loss resulting from the acknowledged bad debt was proximately *81 related to the taxpayer's trade or business. . It is the contention of petitioner that the lending of money to Unthank resulted in increasing the size of Unthank's painting business, putting the latter in a better position to assist petitioner in his real estate business.[1]
Respondent predicates his determination upon a dual position: (1) That the loan was not incurred in petitioner's trade or business, that is, petitioner was not in the real estate business during 1953 when 2 of the loans were made and did not go into the business (if at all) until March 1954 after another loan had been made in January of that year, and (2) that even if petitioner were in the real estate business, the bad debt loss was not proximately related to that business. We need not decide the question of whether petitioner was in fact in the real estate or contracting business during the period in which the loans were made. Assuming arguendo, that Shaw was conducting such a business, he has failed *82 to carry his burden of proving that the loans to Unthank were proximately related thereto. Petitioner testified that he believed that the lending of money to Unthank would help his (petitioner's) business. He predicated this on the belief that Unthank would perform services for him at a price less than the comparable services would cost in the open market. Three checks showing payments to Unthank were introduced into evidence. Two checks indicate payments for work done on one house by Unthank in 1953 and total $160.93. The other check dated July 29, 1954, in the amount of $82.50, is allegedly for work performed by Unthank on another property owned by Shaw. No further evidence of the type of work performed, the total price, the comparable price petitioner would have paid another for the same service, was elicited at the trial, but it appears evident from the record that any saving by petitioner on these items could not have been substantial. Petitioner testified that he could obtain materials at less than retail or what he referred to as "wholesale or builders' prices." He could have hired union labor and paid them the prevailing wage rate. Coupled with the above facts, it *83 should be noted that Unthank was not called as a witness by petitioner and no explanation of his absence was given. On the evidence submitted by petitioner, we must conclude that he has failed to establish that the loans to Unthank were proximately related to his business. No doubt many individuals who loan money have, as one of their motivating factors, the hope that the recipient will be of some future service to the lenders' business. This hope, or desire, standing alone, however, does not create the requisite relationship to the lenders' business which meets the established test of "proximity" thereto. There is no occasion for us to attempt to set up an all-embracing formula for determining when a loan is proximately related to a taxpayer's business. Fundamentally, the issue is one to be resolved on the basis of the facts of the particular case. Here, we think it clear that petitioner has failed to bring himself within the rule of allowance of the deduction of a business bad debt. Petitioner for the first time on brief raises an alternative issue. In essence, it is that the Court should sustain petitioner's claim on the ground that he was in the business of lending money and *84 that the loss herein is connected with that business. Even if the issue were properly raised, we would be unable to sustain petitioner's contentions as the evidence fails to establish that his activities were so extensive as to constitute a trade or business. , affd. (C.A. 4, 1958); . Specifically, it is clear that the Unthank loans were were not made as a part of the conduct of such a business. Under the circumstances, we sustain respondent's disallowance of the deduction of the loans to Unthank as business bad debts. Decision will be entered under Rule 50. Footnotes
1. The use of the term "real estate business" is intended to cover the buying, improving, and selling of realty, as well as the renting of property.↩